IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION


| | | |
|---|---|---|
| JACK K. DOILEY, #103490, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:08-03175-CMC-JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| STATE OF SOUTH CAROLINA; | ) | |
| and WARDEN OF EVANS | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner, Jack K. Doiley ("Doiley"), is an inmate at the South Carolina Department of Corrections serving concurrent sentences for kidnapping (30 years), criminal sexual conduct ("CSC") (30 years), armed robbery (25 years), and carjacking (15 years). He is also serving a five year consecutive sentence for possessing a firearm during a crime of violence. Doiley filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on September 16, 2008. Eventually, an order authorizing service of process was issued on March 3, 2009. Respondents filed a return and motion for summary judgment on July 27, 2009, followed by a supplemental return on August 11, 2009. Because Doiley is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on July 28, 2009 advising him of his responsibility to respond to the motion for summary judgment. Doiley filed a response on August 20, 2009. Respondents filed a reply on September 2, 2009.

1

## Background and Procedural History

On May 20, 1995 Doiley, armed with a pistol, abducted a woman in Horry County as she was closing her business, forced her into her automobile, and compelled her to drive to Georgetown County. There he sexually abused her, robbed her, and fled in her vehicle. The vehicle was later recovered and latent fingerprints from it matched those of Doiley. He was arrested, and tried by a jury in Georgetown County.

At trial Doiley was represented by Reuben Goude, Esquire. During the trial Doiley requested that he be allowed to proceed *pro se*. His motion was granted and Eric Fox, Esquire was appointed as standby counsel. In addition to the fingerprint evidence, DNA evidence linking Doiley to the crimes was introduced by the State. Doiley presented an alibi defense. He was convicted by the jury.

A direct appeal was filed through the South Carolina Office of Appellate Defense. Although the briefs are not a part of the record, it appears the only issue presented was an invalid waiver of right to counsel. The conviction was affirmed by the South Carolina Court of Appeals. State v. Doiley, Unpub.Op.No. 98-UP-408 (Ct.App. filed September 28, 1998). (App. 349). The Remittitur was returned on January 4, 1999.

Doiley filed an application for post-conviction relief ("PCR") on February 24, 1999.[1] (App. 352). An evidentiary hearing was held on January 4, 2001. (*See* Supp.App.). Doiley was represented by Raymond C. Fischer, Esquire. An order of dismissal was filed on June 13, 2001. (App. 362). No appeal was filed.

---

[1]According to Respondents an earlier PCR was dismissed because it was filed while the direct appeal was pending.

Doiley filed another PCR on February 1, 2002. (App. 368). He alleged ineffective assistance of counsel, denial of due process, and double jeopardy. Doiley was represented by Leigh T. Powers, Esquire. Ms. Powers filed a supplemental petition asserting that Mr. Fischer was ineffective for failing to appeal the first order of dismissal. (App. 373). An evidentiary hearing was held on April 26, 2004. Doiley and Mr. Fischer testified. The PCR court issued an order of dismissal filed May 25, 2004. The court ruled that "any allegation other than the belated PCR appeal allegation is successive and its therefore denied." (App. 425). Doiley was given the right to seek review of the denial of his 1999 PCR pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d 395 (1991).

A petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense asserting that Doiley did not knowingly and intelligently waive his right to appellate review of the previous order denying his PCR application. In connection with the petition for writ of certiorari, a Johnson[2] petition was filed raising the following issue:

> Whether there was any evidence to support the PCR judge's findings that petitioner was not entitled to post-conviction relief?

After notice, Doiley filed a *pro se* brief raising the following issues:

I.   Was trial counsel ineffective for not ascertaining that criminal charges from one County had been sufficiently met by an indictment from that same County?[3]

II.  Was trial counsel ineffective for not bringing to the Court's attention the fact that the single indictment states, and charges the same criminal act twice on the same victim at the same instance, constituting Double Jeopardy?

_____

[2]Johnson v. State, 364 S.E.2d 201 (S.C. 1988); see also Anders v. California, 386 U.S. 738 (1967).

[3]This issue was stated twice in the *pro se* brief.

III.  Was the Post-Conviction Relief Attorney ineffective in not sufficiently arguing the issues on appeal of the trial Court's lack of an indictment from one County for criminal charges, the double jeopardy of the same criminal charge appearing twice in the same indictment for the same victim, at the same instance, and the discrepancies of due process by these allegations? The ineffectiveness of failing to file an appeal from the denial of the First Post-Conviction Relief.

The petition for writ of certiorari was denied by the South Carolina Supreme Court on November 14, 2006. The Remittitur was returned on November 30, 2006.

Doiley filed a final PCR on February 27, 2007. A "Conditional Order of Dismissal" was filed on February 13, 2008. A final order was filed on April 1, 2008, holding that the PCR was successive and untimely in violation of state procedural rules.

### Grounds for Relief

In his present petition, Doiley asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** Ineffective Assistance of Counsel.

**Ground Two:** Double Jeopardy.

**Ground Three:** Ineffective PCR Counsel.

**Ground Four:** Lack of Subject Matter Jurisdiction & Due Process

### A. Anti-terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28

U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review.  Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction.  Rule 203(b)(2), SCACR.  Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt.  Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001).  If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court.  Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme

Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable

to enforce the limitation against the [petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

Doiley's conviction became final following direct appeal with the return of the Remittitur by the Court of Appeals on January 4, 1999. His initial PCR was dismissed before that date. Fifty days of untolled time lapsed before Doiley filed his second PCR on February 24, 1999. Giving Doiley credit for statutory tolling during the pendency of his second and third PCRs, the statute was tolled until November 30, 2006 when the Remittitur was returned following denial of his petition for writ of certiorari by the South Carolina Supreme Court. At that point, Doiley had three hundred fifteen (315) days remaining to file his petition in this Court. He delivered his present petition to the institutional mailroom for ruling on September 12, 2008, almost two years after the statute of limitations began to run again. As discussed above, the filing of the PCR in 2007 did not toll the statute of limitations. *See* Pace v. DiGuiglielmo, *supra*

Doiley makes two arguments in his Roseboro response. First, he argues that "the great

writ...remains a constitutional redress remedy...sealed from law's (sic) of abridgement to include statute of limitations." (Response, p. 3). In essence Doiley argues that the AEDPA violates the Suspension Clause of the United States Constitution. *See* U.S.Constit., Art. I, § 9 cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

The courts have uniformly held that the provisions of the AEDPA do not violate the Suspension Clause. *See* Mueller v. Angelone, 181 F.3d 557, 572-573 (4th Cir. 1999); Miller v. Marr, 141 F.3d 976, 997-998 (10th Cir. 1998) and Hill v. Dailey, 557 F.3d 437, 438 (6th Cir. 2009) ("Like every other court of appeals to address the issue, this court has held that AEDPA's one-year statute of limitations does not improperly suspend the writ of habeas corpus.").

Second Doiley argues that he was unaware of the right to file a federal habeas petition "due to a (sic) inadequate, outdated prison law library and new security controlled movement standards." (Response, p. 3). As the Fourth Circuit held in United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004), "[e]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *See also* Harris v. Hutchinson, 209 F.3d 325, 330-331 (4th Cir. 2000) (unfamiliarity with legal process, lack of representation, or illiteracy are not grounds for equitable tolling. The alleged inadequacy or limited access to a law library does not justify equitable tolling. *See* Swiger v. United States, 2007 WL 81888 (N.D.W.Va.); Samuels v. Cohen, 2007 W.L. 1732118 (D.S.C.); Sullivan v. Ozmint, 2008 WL 1994835 (D.S.C.); and Johnson v. Waid, 2009 WL 514211 (N.D.W.Va.).

### B. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to

require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

## 1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state

courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 *et seq.*  A PCR applicant is also required to state all of his grounds for relief in his application.  *See*, S. C. Code Ann. § 17-27-90.  A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal.  Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court.  If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007).   A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2.    **Procedural Bypass**[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[5]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the

federal courts generally decline to hear the claim.  *See* <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice").  In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply.  <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997); <u>cert</u>. <u>denied</u>, 522 U.S. 833 (1997) citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989); and <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances**.** <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1989).  First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim.  <u>Coleman v. Thompson</u>, 501 U.S. at 750 and <u>Gary v. Netherland</u>, 518 U.S. 152, 162 (1996).  Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim.  In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."  <u>Strickler v. Greene</u>, 527 U.S. 263, 283 n. 24 (1999) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show

an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Respondents assert that Doiley's first two grounds for relief alleging ineffective assistance of counsel, are procedurally barred even though they were presented to the South Carolina Supreme Court by way of his *pro se* brief. However, these two claims were not addressed by the PCR court and no Rule 59(e) motion was made. Therefore these claims would not have been reviewed by the Supreme Court pursuant to <u>Marler v. State</u>, *supra*. In his <u>Roseboro</u> response, Doiley argues that his PCR counsel was ineffective for failing to file a Rule 59(e) motion. However, as discussed below there is no constitutional right to counsel in a collateral proceeding and ineffectiveness of PCR counsel is not cognizable and provides no excuse for default.

### C. Ineffective Assistance of Counsel

Even if the claims of ineffective assistance of counsel were considered on their merits, Doiley would not be entitled to relief.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) quoting <u>Strickland</u>, *reversed on other grounds*, 476 U.S. 28 (1986).

In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.").

Doiley asserts that trial counsel was ineffective for (1) "not ascertaining that criminal charges from one county had been sufficiently met by an indictment from that same county" and (2) not bringing to the Court (sic) attention the fact that single indictment states, and charges the same criminal act twice on the same victim at the same instance, constituting double jeopardy."

### 1. Indictment Irregularity

Doiley appears to assert that his trial counsel was ineffective for not challenging the indictment because it alleged crimes in both Horry and Georgetown Counties. He argued in his *pro se* brief presented to the South Carolina Supreme Court:

> Trial counsel was ineffective for not ascertaining that an indictment from Horry County was non-existence, alerting the Georgetown County Court of General Sessions to this fact, and calling for a Mistrial or limiting which criminal charges, if any, actually and legitimately occurred in the jurisdictional limits of Georgetown County. Horry County had several arrest warrants and held an arraignment and a bond hearing, but never presented these charges to the Horry County grand jury.

This appears to relate to an issue raised by Doiley at trial. After the State rested, Doiley argued that the armed robbery count of the indictment should be dismissed because it occurred in Horry County and not Georgetown County where he was being tried. The trial court denied the motion holding that the armed robbery was not complete until Doiley left the victim in Georgetown County. The trial court observed that "it could have been tried in either Georgetown County or Horry County as far as the armed robbery goes." (App. 213).

### 2. Double Jeopardy

The indictment alleges two counts of first degree criminal sexual conduct (Counts 2 and 3). (App. 429). The counts are identically worded, alleging the same date, location, and victim. Doiley asserts that his trial counsel was ineffective for not challenging the charges as a violation of double jeopardy.

Under the Fifth Amendment of the United States Constitution, a person may not be "twice put in jeopardy of life or limb" for the same offense. In general terms, this language has been interpreted to bar prosecution in the following three situations:

1.  Where a person would be tried for the same offense after an acquittal;

2.      Where a person would be tried for the same offense after a conviction; or

3.      Where a person would receive more than one punishment for the same offense.

*See* Benton v. Maryland, 395 U.S. 784 (1969) and North Carolina v. Pearce, 395 U.S. 711 (1969).

The test for double jeopardy was enunciated in Blockburger v. United States, 284 U.S. 299 (1932). According to the teachings of that case, prosecution is barred where the two offenses encompass the same elements. If each offense contains elements not found in the other, a defendant may be tried for both.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

*Id.* at 304.

Applying the above law to the facts of this case demonstrates clearly why petitioner was not subjected to double jeopardy. The victim testified that she was subjected to two separate and distinct sexual batteries. The first occurred inside her vehicle and the second outside her vehicle. (App. 77-79).

Again Doiley raised this argument at the directed verdict stage of his trial. It was rejected by the trial court. (App. 218-219).

Doiley has not shown that his trial attorney, Mr. Goude, was ineffective for failing to challenge the indictment and to raise the double jeopardy issue. The record shows that Mr. Goude was relieved, Mr. Fox was appointed standby counsel, and Doiley, acting *pro se* was able to raise the issues about which he now complains at trial. Both were rejected by the trial court.

18

### D. Ineffective Assistance of PCR Counsel

Doiley asserts that PCR counsel was ineffective for failing to raise on appeal the issue of the armed robbery occurring in Horry County and his being tried in Georgetown County and by failing to file an appeal from denial of his "first" (actually second) PCR.

The right to effective assistance of counsel extends to direct appeal. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 559 (1987). Such a claim must be properly presented to the state courts to be considered in a § 2254 petition. If it is properly presented, ineffective assistance of appellate counsel is judged under the same standard as ineffective assistance of trial counsel. However, failure to raise even non-frivolous claims on direct appeal does not constitute cause for procedural default. <u>Smith v. South Carolina</u>, 882 F.2d 895, 898 (4th Cir. 1989).

The Sixth Amendment does not create a right to counsel in a state PCR proceeding nor on any appeal from the denial of a PCR application. <u>Coleman v. Thompson</u>, 401 U.S. 722, 752 (1991). Consequently, a petitioner in this court cannot claim that his PCR counsel or his counsel on appeal from the denial of his PCR was ineffective. <u>Wise v. Williams</u>, 982 F.2d 142, 144 (4th Cir. 1992). Further, a state's decision to appoint counsel for prisoners who file PCR applications and for a subsequent appeal does not implicate the Fourteenth Amendment. <u>Smith v. Angelone</u>, 111 F.3d 1126 (4th Cir. 1997). Doiley does not argue that a review of his claims is necessary to correct a "fundamental miscarriage of justice." <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1988) and <u>Wise v. Williams</u> at 145. Therefore, Doiley's claim that his attorneys were ineffective in representation on his state PCR does not entitle him to relief [or constitute cause for procedural default].

Further, Doiley's claims are precluded by 28 U.S.C. § 2254(i). Last, Doiley cannot show prejudice because he was granted an appeal under <u>Austin</u> as discussed above.

### E.  Subject Matter Jurisdiction

At the PCR hearing, Doiley raised the issue of subject matter jurisdiction.  He revived his arguments that Georgetown County did not have subject matter jurisdiction of a crime that occurred in Horry County. (Supp.App. 26-27).  The PCR court ruled that the issue could be raised in the Austin appeal. (App. 426).  Doiley raised the subject matter jurisdiction issue in his *pro se* brief, and it was rejected by the Supreme Court on Johnson review.

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in ...criminal cases").  Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong.  Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005).  The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment."  State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental.  A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time.  Further, the court may raise the issue *sua sponte*.  Lack of subject matter jurisdiction may not be waived by the parties.  Brown v. State, 540 S.E.2d 846 (S.C. 2001).  The acts of a court which lacks subject matter jurisdiction are void.  State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law.  Thus, the frequently

quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. *See* Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

The Supreme Court found no issue with the subject matter jurisdiction challenge based on South Carolina law.

### Conclusion

Based on a review of the record, it is recommended that Respondents' motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

October 1, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).